**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| JOAN SMITH-SCHRENK, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-13-2902 |
| | § | |
| GENON ENERGY SERVICES, L.L.C., *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the court are defendants, Genon Energy Services, L.L.C. ("Genon Services")

and Genon Energy, Inc.'s ("Genon Energy") motions for summary judgment.  Dkts. 17, 19.  After

considering all the briefing, record evidence,[1] and applicable law, the court is of the opinion that

Genon Services's motion for summary judgment (Dkt. 17) should be GRANTED in part and

DENIED in part and Genon Energy's motion for summary judgment (Dkt. 19) should be

GRANTED.

---

[1]  Plaintiff's request for leave  (Dkt. 27) to file two additional declarations as part of the summary judgment record is granted.  The statements made in the declarations and evidence attached thereto have been considered in this court's analysis.  However, the court notes that the declarations and additional evidence provided minimal support for plaintiff's position because they largely consist of hearsay and include conclusory allegations, as opposed to specific instances of conduct relevant to these motions.

Further, defendants' objections to plaintiff's summary judgment evidence (Dkt. 25) are overruled in substance, or are otherwise moot.  The only evidence objected to and considered by this court are paragraphs 3-4 of Smith-Schrenk's declaration (Dkt. 20, Ex. B).  The court finds that plaintiff has sufficient personal knowledge to make the statements contained in these paragraphs regarding the structure of the companies based on her former position at Genon Services.  Plaintiff held a more senior position than defendants suggest, given her compensation, regular correspondence with senior executives, and job duties, including investigating, monitoring, and reporting potential regulatory or ethical violations within the company. Based on her previous position within the company and her averment that her statements are based on personal knowledge, the court overrules defendants' objections to these portions of her declaration.

# I. Background

Plaintiff, Joan Smith-Schrenk was hired by Genon Services as a manager in its Ethics & Compliance ("E&C") Department in March 2010.[2]  Her duties included investigating, monitoring, and reporting potential regulatory or ethical violations.[3]  Plaintiff's position required "excellent communication skills" because she regularly corresponded with employees, including senior level executives.[4]  Jane Champion, the director of Genon Services's E&C Department, was plaintiff's immediate supervisor.[5]  Champion reported to the general counsel, Michael Jines.[6]

The E&C Department was consistently busy, requiring plaintiff to work 50-60 hours per week.[7]  Champion, however, worked a reduced schedule of approximately 26 hours per week, which she negotiated as a term of her employment with Genon Services.[8]  According to Genon Services, this reduced schedule caused consternation among the lower level employees of the E&C Department, including plaintiff.[9]  Soon after beginning her employment, plaintiff complained to

---

[2]  Dkt. 17, App'x 2, Declaration of  Karen Morrison, ¶3.

[3]  *Id.*

[4]  *Id.* at pp. 3-4.

[5]  Dkt. 17, App'x 1, Declaration of Michael Jines ("Jines Dec."), ¶2.

[6]  *Id.*

[7]   *Id.* at App'x 1, Declaration of Jane Champion ("Champion Dec."), ¶3; Dkt. 17, App'x 5, Deposition of Joan Smith-Schrenk ("Smith Dep."), p. 235.

[8]  Champion Dec. ¶3.

[9]  Dkt. 17, App'x 3, p. 43; Smith Dep., pp. 235-236, 239; Dkt. 17, App'x 9, Deposition of Adriana Herrera ("Herrera Dep."), pp. 5-7, 77-78.

employees outside of the E&C Department about the heavy workload and Champion's demanding managerial style.[10]

Plaintiff's work performance was generally satisfactory; however, Champion had concerns regarding plaintiff's writing style, which tended to include unnecessary details and "bizarre asides."[11] In March 2011, plaintiff received a high annual review from Champion, who noted that plaintiff met all expectations.[12]  By September 2011, however, Champion gave plaintiff her mid-year evaluation and provided a development plan aimed at correcting plaintiff's communication and time management issues.[13]  Champion wrote:  "I would like to see you be focused, clear, concise and careful in your communications and set realistic deadlines and then manage your tasks accordingly."[14]

In the March 2012 review, Champion noted improvement in plaintiff's performance, but also reiterated that plaintiff needed to maintain such improvement by meeting deadlines and communicating concisely.[15]  The review indicated that plaintiff had only met "most expectations."[16]

---

[10]  Smith Dep., pp. 235, 239; Dkt. 17, App'x 1, Declaration of Dirk Suter, ¶4.

[11]  Dkt. 17, App'x 6, Deposition of Jane Champion ("Champion Dep."), pp. 52-53; Dkt. 17, App'x 3, p. 37; Smith Dep., pp. 107-08.

[12]  Dkt. 20, App'x G, GEN 0097-0099.

[13]  Dkt. 17, App'x 3, p. 46.

[14]  *Id.* at 8.

[15]  Dkt. 17, App'x 2, pp. 9-12.

[16]  Dkt. 20, App'x G, GEN 0091-0093.

Plaintiff acknowledged that she agreed with the review.[17]  Plaintiff also received a performance salary increase around this time.[18]

In early 2012, plaintiff began missing more work in order to take care of her mother and her own health needs.  A cyst on plaintiff's neck began enlarging, causing plaintiff concern that she might have cancer.[19]  A biopsy was performed on January 26, 2012.[20]  The results were inconclusive, but the doctors advised her that she should have the cyst removed as soon as possible.[21]  Plaintiff scheduled the surgery for February 2012; however, plaintiff postponed the surgery because of the lengthy recovery time and her care-taking obligations for her mother.[22]  Champion referred plaintiff to the surgeon that performed the removal procedure in May 2012.[23]  Plaintiff often discussed her and her mother's medical issues with Champion.[24]  According to Genon Services, Champion tried to be supportive and offer words of encouragement.[25]

In late March, plaintiff requested intermittent FMLA leave beginning April 4 in order to take care of her mother.[26]  Plaintiff maintains that Champion's reaction was immediately hostile, and

---

[17]  Dkt. 17, App'x 2, p. 9.

[18]  Dkt. 20, App'x A, Smith Dep., pp. 131-32.

[19]  *Id.* at 147; Dkt. 20, App'x B, Smith Dec. ¶6; Dkt. 20, App'x H, pp. 456, 472.

[20]  *Id.* at pp. 457, 472-73.

[21]  Smith Dep., p. 166, 171, 174; Dkt. 20, App'x H, p. 456, 472.

[22]  Smith Dep., pp. 147-48, 176- 235, 255; Smith Dec. ¶6.

[23]  Champion Dec. ¶6.

[24]  *Id.*

[25]  Dkt. 17, App'x 3, pp. 17-18, 58.

[26]  Smith Dec. ¶7; Smith Dep., p. 98; Dkt. 20, App'x G, GEN 00423.

Champion became visibly upset, telling plaintiff she would "get back to her."[27]  Thereafter, plaintiff asserts that Champion remained hostile toward her leave requests.  Specifically, after requesting a reduced workload, plaintiff claims that Champion, instead, increased her workload.[28]  On another occasion, plaintiff requested permission to leave early to complete paperwork related to her mother's hospital stay, and Champion asked if someone else could take care of it.[29]  Champion also emailed plaintiff asking where she was when plaintiff had already informed Champion she would be out to take care of her mother.[30]  On April 17, plaintiff informed Champion she needed to leave by 4:00 p.m. to fill out paperwork related to her mother's funeral arrangements.[31]  Champion scheduled a meeting at 3:00 p.m. and held plaintiff in the meeting until after 4:30 p.m.[32]

Despite Champion's purported hostility toward plaintiff's leave requests, Genon Services granted all of the leave requested by plaintiff.[33]  However, many of plaintiff's absences were taken with little to no advance notice, causing disruption in the E&C Department.[34]  Because Champion believed that plaintiff's performance was declining, she wrote a coaching-for-improvement plan in

---

[27]  Smith Dec. ¶7; Smith Dep., pp. 284-85.

[28]  *Id.* at pp. 277, 285-90, 309-310; Smith Dec. ¶12.

[29]  *Id.* at ¶8; Smith Dep., p. 325.

[30]  Smith Dec. ¶8; Dkt. 20, App'x F, SMITH-SCHRENK ("SS") 00067-00069; Dkt. 20, App'x G, GEN 1236.

[31]  Smith Dec. ¶11.

[32]  Smith Dep., pp. 74-82, 89; Smith Dec. ¶11.

[33]  Dkt. 17, App'x 2, pp. 26-31; Smith Dep., p. 92.

[34]  Champion Dec. ¶¶4-5.

April 2012.[35]  The plan was not intended to be a disciplinary action.[36]  Champion noted that she had

confidence that plaintiff could improve her performance and meet expectations.[37]  Champion planned

to meet with plaintiff about the coaching plan on April 18, 2012.[38]  Smith, however, did not attend

work that day.  Instead, she told Champion she needed to take full-time FMLA leave, effective

immediately.[39]

Plaintiff maintains while she was out on full-time FMLA leave, Champion continued to call

and email her requiring her to perform work assignments, including updating compliance cases,

revising a safety review project, and dropping off files at the office.[40]  Plaintiff contends that she

spent 20-40 hours working while on unpaid leave.[41]

Prior to plaintiff taking full-time leave, Champion asked her supervisor, Michael Jines, if she

could hire a temporary employee given plaintiff's frequent absences.[42]  After posting a temporary

position for several weeks, Champion and her supervisor realized that no qualified candidates would

accept this type position on a temporary basis.[43]  However, they decided, given the workload of the

---

[35]  *Id.* at ¶4.

[36]  Dkt. 17, App'x 2, p. 46.

[37]  *Id.*

[38]  Dkt. 20, App'x G, GEN 1235.

[39]  Dkt. 17, App'x 3, pp. 31, 55.

[40]  Dkt. 20, Smith Dep., pp. 44-47, 50-53, 153-65; Smith Dec. ¶¶14-15; Dkt. 20, App'x G, GEN 1272.

[41]  Smith Dep., p. 160; Smith Dec., ¶14.

[42]  Dkt. 17, Champion Dec. ¶7.

[43]  *Id.*; Jines Dec. ¶6.

E&C Department, that hiring a permanent employee was justified.[44]  They also recognized that if plaintiff's performance problems persisted, having another permanent employee would also be helpful.[45]  Plaintiff learned from a co-worker on May 22, 2012, while on leave, that a permanent position similar to hers had been posted on Genon Services's website.[46]

Plaintiff returned to work on June 18, 2012.[47]  On June 20, 2012, Champion discussed the previously prepared coaching plan with plaintiff.[48]  The plan included objectives for plaintiff to continue improvement with her communication skills, commitment to deadlines, organizational abilities, and time management.[49]  The plan also advised plaintiff that she should give 48 hours notice of absences "when possible."[50]  Plaintiff claims this requirement was put in place for her alone.[51]  Plaintiff also recalled that the majority of the coaching session was spent reviewing a list of absences, which were primarily medically related absences.[52]

After returning from leave, plaintiff also learned that Genon Services was planning to hire another employee in a position equivalent to hers when she saw paperwork on Shawn Oiler's desk.[53]

---

[44]   Champion Dec. ¶7; Jines Dec. ¶6.

[45]   *Id.*

[46]   Smith Dep., pp. 149-50, 205-06, 280; Smith Dec. ¶17; Dkt. 20, App'x G, GEN 1053-1055.

[47]   Dkt. 17, App'x 2, p. 24.

[48]   *Id.* at pp. 39-41, 43-46; Champion Dec. ¶13.

[49]   Dkt. 17, App'x 2, pp. 43-46.

[50]    *Id.* at p. 45.

[51]   Dkt. 20, Smith Dec. ¶19.

[52]   Dkt. 20, App'x C, Deposition of Jane Champion, pp. 75-80; Smith Dec. ¶19.

[53]   Smith Dep., p. 322.

On June 25, Oiler noted:

> I followed-up with Jane this morning.  At this time, they can't make a decision.  They need a little more time to evaluate the situation with Joan[ ].  As such, I recommended that we place the req on Hold for now until a final decision could be made.  Jane called Caleb and let him know that we need a bit more time before a final decision could be made.  We'll stay in contact with him and send updates as they occur.[54]

Plaintiff maintains that Genon Services delayed the hiring of the new employee because they expected she would quit or be terminated.  Plaintiff cites to different notes from Shawn Oiler on June 18, 2012, which provided:

> I spoke to Jane Champion to determine if she was ready to make a final hiring decision regarding Caleb.  While she did follow-up with some of Caleb's former Managers & Supervisors and Mike Jines is okay with the Hire, she cannot make a decision at this time.  Joan Smith returned to work this week.  The return was unplanned and unexpected.  She and Mike wish to evaluate the situation for the next week before making a final decision.  I'll follow up with Jane next Monday.[55]

Moreover, plaintiff learned from other employees that Champion had been approaching energy traders and other employees asking them to "rate" plaintiff's performance in writing.[56] Plaintiff believed this was another example of her being singled out following her FMLA leave. Three weeks after her return, plaintiff resigned.[57]  Plaintiff believed she was going to be fired, so she tendered her resignation letter on July 9, 2012, citing the hostile work environment Champion had created following her FMLA approved absences and medical issues.[58]

---

[54]  Dkt. 20, App'x G, GEN 1057.

[55]  *Id.*

[56]  Dkt. 20, App'x D, Deposition of Mary West, p. 32; Smith Dep., pp. 269-73; Dkt. 20, App'x G, GEN 1433-1434.

[57]  Dkt. 17, App'x 3, p. 3; *id.,* App'x 4, p. 6.

[58]  Dkt. 20, App'x G, GEN 0104; Smith Dec. ¶18.

Plaintiff filed the instant lawsuit on October 1, 2013.  Dkt. 1.  Plaintiff alleged causes of action under the Family Medical Leave Act ("FMLA") and the Americans with Disability Act ("ADA"), including FMLA retaliation and harassment resulting in a hostile work environment, FMLA interference, FMLA retaliation resulting in constructive discharge, ADA discrimination and harassment resulting in a hostile work environment, and ADA discrimination resulting in constructive discharge. Dkts. 1, 20.  Specifically, plaintiff claims she was constructively discharged and retaliated against for taking leave under the FMLA.  Plaintiff further asserts that while she was on full-time FMLA leave, defendants interfered with her leave by asking her to perform 20-40 hours of work.  Finally, plaintiff alleges that she also suffered a hostile work environment and was retaliated against based on her disability.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56©); *Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986).  An issue is "material" if its resolution could affect the outcome of the action.  *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007).  "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting FED. R. CIV. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Similarly, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *Galindo v. Precision Amer. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

### III. ANALYSIS

#### A. Hostile Work Environment

Plaintiff alleges that she was subjected to a hostile working environment based on her

disability[59] and her decision to take FMLA leave.[60]  For a hostile work environment claim to prevail under a disability discrimination theory, plaintiff must prove:  (1) that she belonged to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her disability; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action.  *Flowers v. S. Reg'l Physician Services, Inc.*, 247 F.3d 229, 235-36 (5th Cir. 2001).  For harassment to affect a term, condition, or privilege of employment, the harassing conduct must be sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.  *Id.* (citing *McConathy v. Dr. Pepper/Seven-Up Corp.*, 131 F.3d 558, 563 (5th Cir. 1998)).  In determining whether a work environment is abusive, this court must consider the totality of the evidence, including "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interfere[d] with an employee's work performance."  *Shepherd v. Comptroller of Public Accounts of State of Tex.*, 168 F.3d 871, 874 (5th Cir. 1999).  The work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S. Ct. 2275 (1998) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

---

[59]  The court makes no determination regarding whether plaintiff suffered a disability under the ADA.

[60]  Plaintiff has not cited to and the court has not found any case wherein a federal court has recognized a FMLA cause of action based on hostile environment harassment.  Therefore, the court will construe plaintiff's hostile work environment claim under the ADA, which has been recognized by the Fifth Circuit, and will consider the FMLA evidence presented by plaintiff in relation to her ADA hostile environment claim.  *Flowers v. S.. Reg'l Physician Services, Inc.*, 247 F.3d 229, 235 (5th Cir. 2001).

The evidence proffered by plaintiff to support her hostile environment claim includes the following:  (1) Champion responded hostilely to plaintiff's requests for intermittent FMLA leave by stating that she would get back to her, increasing her work load, and meeting with Human Resources regarding plaintiff, (2) Champion discussed a coaching plan to improve plaintiff's performance in emails to her supervisor, (3) Champion emailed plaintiff regarding work projects while she was on full-time leave, (4) Genon Services posted a job opening for a position equivalent to plaintiff's while she was on leave, (5) Champion approached plaintiff with a coaching plan upon her return from leave with the primary topic being absences, and (6) Champion asked other employees for evaluations regarding plaintiff's performance upon her return from leave.

Considering all of the allegations of harassment proffered by plaintiff, she has not set forth the type of repeated or extreme conduct that would constitute a hostile work environment.  First, many of the instances relied upon by plaintiff do not implicate her alleged disability or FMLA leave. *Vallecillo v. U.S. Dep't of Housing & Urban Dev.*, 155 F. App'x 764, 767-68 (5th Cir. 2005) (per curiam).  For instance, the coaching plan was prepared prior to plaintiff's FMLA leave and addressed ongoing performance issues first presented in plaintiff's 2011 performance evaluation.  Also, the coaching plan was only presented to plaintiff soon after her return from leave because she unexpectedly took full-time FMLA leave, effective immediately, on the day the coaching plan was originally scheduled to be presented to her by Champion.  The job posting also does not support plaintiff's position that she was being harassed on the basis of her disability.  *Williams v. Merck & Co., Inc.*, 381 F. App'x 438, 440 (5th Cir. 2010) (finding no hostile work environment despite plaintiff's job being posted on recruiting website during her leave).  Genon Services had legitimate reasons for posting the position, including the undisputed heavy work load in the E&C Department and plaintiff's absences.  And, Champion's reactions to plaintiff's requests for FMLA leave or

12

emailing her while on leave, while related to her FMLA rights and disability, do not constitute severe or pervasive conduct.  In fact, all of plaintiff's leave requests were granted and numerous emails show that Champion was supportive of plaintiff's leave requests during this time period.[61] Champion also recommended the surgeon that removed plaintiff's cyst.[62]  As to the remaining evidence, plaintiff only offers her subjective beliefs that these actions were taken as a result of her disability or FMLA leave.  Even taking into account plaintiff's subjective beliefs, her work environment was not objectively hostile or abusive.

An oft-cited case in the Fifth Circuit highlights the insufficiency of plaintiff's evidence relating to her hostile work environment claim.  In *McConathy v. Dr. Pepper/Seven-Up Corp.*, 131 F.3d 558 (5th Cir. 1998), the Fifth Circuit found that the alleged harassment was neither severe nor pervasive even though the plaintiff's supervisor was (1) unsupportive toward plaintiff when she needed several surgeries, (2) became angry and said she had "better get well this time" when plaintiff explained her need for additional surgery, (3) told plaintiff he would no longer tolerate her health problems, (4) complained about plaintiff's extensive use of the company's benefits, (5) pressured plaintiff to return to work before she recovered, (6) told plaintiff's co-workers to cease communicating with her, (7) transferred assignments away from plaintiff, and (8) refused to acknowledge plaintiff's presence.  *Id.* at 563–64.  Plaintiff here was not treated as poorly as the plaintiff in *McConathy*, yet even the allegations in *McConathy* were insufficient to support a hostile

---

[61] Dkt.20, App'x 7, GEN 0204 (March 21, 2012 email, plaintiff: "I would like to take Mon., Thurs. and Friday off the first week of April 2012"; Champion: "That's fine with me."); *id.* at GEN 0202 (March 5, 2012 email, plaintiff: "I need to be out this morning to take my mom to a med center appointment"; Champion: "Hope she is doing better."); *id.* at GEN 0205 (March 26, 2012 email, plaintiff: "My mom was admitted to the St. Lukes ER last night . . . I need to run back over there to determine if they will transfer her to another hospital or release her"; Champion: "Hope she gets better. Be careful.").

[62] Dkt. 17, Champion Dec. ¶6.

work environment claim.  Likewise, plaintiff's allegations do rise to the level of severe or pervasive conduct such that her work environment became hostile.

### B.        Constructive Discharge

For largely the same reasons, plaintiff's FMLA retaliation and disability discrimination claims must also fail because plaintiff cannot meet her prima facie case based on constructive discharge.  First, plaintiff argues that Champion's emails regarding her intentions to fire plaintiff constitute direct evidence of a retaliatory or discriminatory motive by Champion against plaintiff for exercising her rights under the FMLA.  A plaintiff can prove intentional discrimination through either direct or circumstantial evidence.  *Urbano v. Continental Airlines*, *Inc.*, 138 F.3d 204, 206 (5th Cir. 1998).  "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption."  *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002).  Workplace comments provide sufficient evidence of discrimination if they are (1) related to the protected class of persons of which the plaintiff is a member, (2) proximate in time to the complained of adverse action, (3) made by an individual with authority over the employment decision at issue, and (4) related to the employment decision at issue.  *Moss v. BMC Software, Inc.*, 610 F.3d 917, 929 (5th Cir. 2010).

The relevant emails were sent from Champion to Jines on April 12 and April 17, respectively. The April 12th email provides:

> Mike - couple of things to mention to you before I head out for the week:
>
> •        Coaching for Improvement session with Joan - I'd like to walk you though my plans for this in our weekly meeting next Tuesday.  The 3 interrelated topics are 1) her performance 2) the situation with her mom and 3) her own need for medical leave.  Most of my message to her will be around item 1) her performance.  She will need to seek advice from HR for the last two.  I'll send you my documentation ahead of time.

- Temporary Staff - the interview is scheduled for Tuesday and the person is available immediately if we give her the green light. HR has suggested that the message to Joan regarding this is we are doing it to help me get some projects done (not her). She can figure the rest out.

- Joan is aware that something is going on and is concerned about her job. I plan to have a discussion with her next Wednesday, once I'm clear you and I are on the same page.[63]

Thereafter, on April 17, 2012, Champion again writes to her supervisor:

Mike–As discussed, it is my hope that Joan will turn her performance around and meet expectations. However, if that does not happen, we are looking at a minimum of 90 days from tomorrow prior to termination.

Here are the basic steps I anticipate if things do not change:

- Tomorrow - Coaching for Improvement

- +30 days - Initial Reminder, with HR

- +30 days - Final Warning and Commitment Making Period, with HR

- +30 days - Termination

I hope this is not the path we are headed on, but we are at least informed at this point.[64]

Although the first email includes general observations about plaintiff's need for medical leave, the emails do not expressly state or even imply that her leave or medical condition was the reason for any suggested adverse action. Champion's emails to her supervisor were consistent with her plans to coach plaintiff in order to address plaintiff's ongoing performance issues, while the reference to plaintiff's medical leave understandably focused on the need for Human Resources's involvement. The email also discussed the prospect of hiring temporary staff consistent with the Genon Services's need to manage the work overflow in light of plaintiff's leave. The emails do not

---

[63] Dkt. 20, App'x 7, GEN 1235.

[64] *Id.* at GEN 1230.

15

directly show discrimination on the part of Champion, but rather reveal appropriate business planning given the work and staffing needs of the E&C Department. Additionally, Champion did not take the adverse action cited in these emails, rather plaintiff chose to quit and had no knowledge of these emails at the time of her decision. These communications are neither direct or unambiguous such that discriminatory animus can be shown without making inferences or presumptions regarding Champion's intent. *E.E.O.C. v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996). Thus, plaintiff has failed to offer any direct evidence of discrimination.

When no direct evidence of discrimination is offered, the *McDonnell Douglas* framework requires the plaintiff to establish a *prima facie* case of discrimination, which, if established, raises a presumption of discrimination. *Rutherford v. Harris County, Tex.*, 197 F.3d 173, 179-80 (5th Cir. 1999) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S. Ct. 1817 (1973)). To make a prima facie showing of retaliation under the FMLA, the plaintiff must show that (1) she was protected under the FMLA, (2) she suffered an adverse employment decision, and (3) either she was treated less favorably than an employee who had not requested leave under the FMLA or the employer made the adverse decision because she took FMLA leave. *Hunt v. Rapides Healthcare Sys.*, 277 F.3d 757, 768 (5th Cir. 2002). Similarly, to make a prima facie showing of disability discrimination under the ADA, the plaintiff must show that (1) she suffered from a disability or was regarded as disabled, (2) she was qualified for the job that she held, (3) she was subjected to an adverse employment action on account of her disability, and (4) she was replaced by a non-disabled person or was treated less favorably than non-disabled employees. *E.E.O.C. v. Chevron Phillips Chem. Co., L.P.*, 570 F.3d 606, 615 (5th Cir. 2009). Thus, in order to make the requisite prima facie showing for either claim, plaintiff must establish that she was subjected to an adverse employment action.

16

In support of this element, plaintiff maintains that the discrimination and retaliation led to her constructive discharge.[65]  Constructive discharge occurs when an employee has quit her job under circumstances that are treated as an involuntary termination of employment.  *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004).  To prove constructive discharge, a plaintiff must prove that working conditions were so intolerable that "a reasonable person would have felt compelled to resign."  *Pa. State Police v. Suders*, 542 U.S. 129, 141, 124 S. Ct. 2342 (2004).  The environment must be "something more" than that present in a harassment or hostile work environment claim; a plaintiff must show a "'worse case' harassment scenario, harassment ratcheted up to the breaking point."  *Id.* at 147-48.

In analyzing whether constructive discharge occurred, a court must look to the individual facts of each case without regard to the employee's subjective state of mind.  *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994).  The following nonexclusive list of factors are relevant to the determination:  (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a less experienced or qualified supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; and (7) offers of early retirement that would make the employee worse off regardless of whether the offer was accepted or not.  *Id.*  The resigning employee

---

[65]  In her surreply, plaintiff also argues that the coaching plan should be considered an adverse action. Plaintiff cites to related cases in the Eastern District of Texas, *Perret v. Nationwide Mut. Ins. Co.*, 2012 WL 3944884 (E.D. Tex. Aug. 7, 2012) and *Pierre v. Nationwide Mut. Ins. Co.*, 2012 WL 3955128 (E.D. Tex. Aug. 7, 2012), which are wholly distinguishable from the instant case and do not stand for the proposition asserted by plaintiff.  In *Pierre* and *Perret*, the two employees were not only given performance improvement plans, but the coaching plans were not legitimately based on their job performance, the employees were placed on final disciplinary warning,  and the employees satisfied the coaching plans before being placed on final warning.  *See e.g., Perret*, 2012 WL 3944884, at *8.  These cases do not stand for the proposition that coaching plans can be considered an adverse action, but rather consider the totality of the circumstances in analyzing plaintiffs' claims for constructive discharge.  The facts presented in *Pierre* and *Perret* are not present here.

bears the burden to prove constructive discharge. *Jurgens v. E.E.O.C.*, 903 F.2d 386, 390-91 (5th Cir. 1990).

Plaintiff does not argue that any of these factors existed, other than what she characterizes as harassing conduct in the form of the coaching plan, requests for performance reviews from other employees, and a job posting for a position equivalent to hers.[66] As discussed *supra*, these particular acts by Champion did not constitute a hostile work environment, much less the greater degree of harassment required to show constructive discharge. *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). A reasonable employee would not have felt compelled to resign amidst these conditions. The coaching plan and meeting arose from performance concerns that developed before plaintiff took FMLA leave. Champion and her supervisor expressed confidence that plaintiff could continue to improve her performance and anticipated giving her an opportunity to do so.[67] Further, the timing of the coaching meeting occurred following plaintiff's leave because, on the day the meeting was originally scheduled, plaintiff took full-time FMLA leave with no advance notice. Regardless of the reason, receiving a performance plan upon her return does not amount to harassing conduct. *Haley*, 391 F.3d at 649 (in addition to other evidence, receiving "overly severe performance plan" the day she returned from FMLA leave did not support constructive discharge).

The job posting and requests for coworkers' evaluations of plaintiff's performance also do not create the type of intolerable working conditions giving rise to constructive discharge. Plaintiff

---

[66] Plaintiff has submitted additional evidence regarding the experiences of a coworker, Adriana Herrera, in support of her constructive discharge and hostile work environment claims. The court does not find this evidence relevant to plaintiff's individual claims. *Septimus v. Univ. of Hous.*, 399 F.3d 601, 612 (5th Cir. 2005) (plaintiff's summary judgment evidence pertaining to other women, and not plaintiff, was irrelevant).

[67] Dkt. 17, App'x 1, Jines Dec. ¶7; Dkt. 20, App'x 7, GEN 1230 (email from Champion to Jines outlining disciplinary plan if plaintiff could not improve her performance on April 17, 2012 and stating that she "hopes this is not the path we are headed on" and that she "hope[s] Joan will turn her performance around and meet expectations.").

subjectively believed that these actions were taken in an effort to terminate her employment; however, plaintiff admits she did not know why Champion planned to hire a new employee and only assumed the job was for her position because it matched her job description.[68]  If plaintiff had inquired into the reasons for the job posting or solicitation of performance reviews from other employees, instead of quitting after just three weeks back on the job, she would have learned her employer's intentions were not related to her disability or FMLA leave.  "[A] reasonable employee who genuinely felt these working conditions were upsetting to the point of intolerable would have attempted resolution of these concerns before choosing to quit."  *Id.* at 652.  Plaintiff's subjective beliefs that her imminent termination was causally connected to her protected activity are insufficient to meet the "reasonable employee" standard.  *Id.* (refusing to find constructive discharge even when employer expressed its intent to remove employee from her job while she was on leave because these actions were not so intolerable that a reasonable employee would be compelled to resign, rather it was plaintiff's subjective beliefs regarding defendants' motivations that she implies demonstrates that they were intending to fire her).  Because plaintiff is unable to show a genuine issue of material fact that she was constructively discharged, her discrimination and retaliation claims must fail.

### C.    FMLA Interference

Plaintiff also asserts that defendants interfered with her FMLA rights by requiring her to perform work while she was on full-time leave.  Defendants argue that any contact by Champion with plaintiff while she was on leave was de minimis and any work performed by plaintiff was done voluntarily, and not at the request of Champion. The FMLA entitles eligible employees up to 12 weeks of unpaid leave per year for certain medically-related reasons.  29 U.S.C. § 2612(a)(1).  To ensure employers do not interfere with this entitlement, the FMLA makes it "unlawful for any

---

[68]  Dkt. 17, App'x A, Smith Dep., pp. 281-283.

employer to interfere with, restrain, or deny the exercise of or the attempt to excercise, any right provided." *Id.* § 2615(a)(1).  The term "interfering with" includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave."  29 C.F.R. § 825.220(b); *Bell v. Dallas Cnty.,* 432 F. App'x 330, 334 (5th Cir. 2011) (citation omitted).

Although the Fifth Circuit has not had an opportunity to address whether requiring an employee to perform work while on FMLA leave constitutes interference, other circuit courts have considered the issue.  The general consensus among courts is that reasonable contact limited to inquiries about the location of files or passing along institutional or status knowledge will not interfere with an employee's FMLA rights; however, asking or requiring an employee to perform work while on leave can constitute interference.  On the one hand, an employer's de minimis contacts with an employee while on leave does not necessarily materially interfere with the employee's leave.  "[T]here is no right in the FMLA to be 'left alone'" or be completely relieved from responding to an employer's discrete inquiries.  *O'Donnell v. Passport Health Communications, Inc.*, 561 F. App'x 212, 218 (3d Cir. 2014) ("de minimis contacts did not require [employee] to perform work to benefit the company and did not materially interfere with her leave"); *Sabourin v. Univ. of Utah*, 676 F.3d 950, 961 (10th Cir. 2012) ("[T]he University's request for materials from [the employee] was not an impermissible demand for work during FMLA leave.  It was a request for a modest, unburdensome effort to enable [the employee's] work to be performed while he was on leave.").  Accordingly, fielding occasional calls about one's job while on leave is a professional courtesy that does not abrogate or interfere with the exercise of an employee's FMLA rights.  *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 537 (S.D.N.Y. 2009); *see also Kesler v. Barris, Sott, Denn & Driker, P.L.L.C.*, 482 F. Supp. 2d 886, 910–11 (E.D. Mich. 2007) (occasional phone calls inquiring about files do not qualify as "interference" with FMLA leave).  And, when limited

to the scope of passing on institutional knowledge to new staff, or providing closure on completed assignments, employers do not violate the FMLA by making such calls. *Id.*

On the other hand, asking or requiring an employee to work while on leave can cross the line into interference. "[T]he ability to take FMLA leave is not conditioned upon the willingness of the employee to remain 'on call' to the employer. Of the many prerequisites to FMLA leave, the convenience of the employer is not one." *Sherman v. AI/FOCS, Inc.*, 113 F. Supp. 2d 65, 70–71 (D. Mass. 2000) ("By essentially requiring Plaintiff to work while on leave . . . Defendant has 'interfered' with Plaintiff's attempts to take leave . . . ."); *see also Arban v. West Publishing Corp.*, 345 F.3d 390, 405 (6th Cir. 2003) (asking employee to perform work-related tasks while he was on medical leave interfered with his rights under the FMLA); *Franks v. Indian Rivers Mental Health Ctr.*, 2012 WL 4736444, at *17 (N.D. Ala. Sept. 30, 2012).

Genon Services relies on *Elsayed v. University of Houston*, which held that to prevail on an interference claim, an employee must show either that she was denied her entitlement under the FMLA, she refrained from taking leave because of her employer's discouragement, or she returned from leave early based on her employer's conduct. *Elsayed v. Univ. of Hous.*, 2012 WL 2870699, at *4 (S.D. Tex. Jul. 11, 2012). The court is not persuaded that a viable FMLA interference claim is limited to those instances. The plaintiff in *Elsayed* was not asked or required to perform work while she was on leave, making this case inapposite to the facts herein. "Interfering with" includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220(b). By requesting an employee work during FMLA leave, an employer not only discourages the employee from using such leave, but precludes her from using such leave during that period of time. In sum, the employer has failed to "respect" the employee's FMLA "entitlements."

*Bell v. Dallas Cnty.*, 432 F. App'x 330, 334 (5th Cir. 2011) (citing *Kauffman v. Fed. Express Corp.*, 426 F.3d 884, 885 (7th Cir. 2005)).

Here, defendants did not deny any of plaintiff's requested FMLA leave or refuse to reinstate her to her previous position upon her return from leave.[69]   However, plaintiff avers that during her full-time FMLA leave, Champion continued assigning her work.  Specifically, Champion asked her to update the case files that plaintiff was working on and complete a safety review project.[70]  Plaintiff said that Champion also called her and requested that she personally deliver the safety review to the office.[71]   Plaintiff claims to have worked 20-40 hours while on leave.[72]   In addition to plaintiff's declaration, an email was also offered as evidence from plaintiff to Champion on May 2, 2012, stating that plaintiff had "updated the Safety Review last night based on your changes" and Champion thanked plaintiff for dropping of the files.[73]   While Champion disputes that she asked plaintiff to do work or deliver the files to the office, this only creates a genuine issue of material fact precluding summary judgment on plaintiff's FMLA interference claim.

Defendants also dispute that plaintiff's FMLA interference claim can withstand summary judgment because, even if interference occurred, plaintiff has failed to show that she was prejudiced or damaged by the interference.  To sustain a FMLA interference claim, plaintiff must establish that she "has been prejudiced by the violation in some way."  *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89, 122 S. Ct. 1155 (2002).  In order to prove prejudice by an FMLA violation, plaintiff

---

[69]   *Id.* at p. 92.

[70]   Dkt. 20, App'x B, Smith Dec. ¶¶14-15.

[71]   *Id.*

[72]   *Id.*

[73]   Dkt. 20, App'x 6, SS 00024.

must demonstrate some harm remediable by either damages or equitable relief, as provided by the FMLA. *Evans v. Books-A-Million*, 762 F.3d 1288, 1296 (11th Cir. 2014). Relevant here, plaintiff must show that she is entitled to damages, for instance "any wages, salary, employment benefits, or other compensation denied or lost . . . by reason of the violation." 29 U.S.C. § 2617(a)(1)(A).

In her complaint, plaintiff seeks "actual damages," "back pay," and "front pay." Dkt. 1, p. 14. Further, while plaintiff has inartfully responded to defendants' challenge to plaintiff's proof of prejudice, plaintiff does maintain that "the amount of Smith-Schrenk's damages, whether nominal, actual, emotional, and/or other damages for the interference with her rights and the benefits she was entitled to under the law, are fact issues inappropriate for resolution at the summary judgment stage." Dkt. 27, p. 7. Here, a factual dispute exists regarding whether plaintiff was required to work while on unpaid leave, and therefore, either lost compensation or suffered other damages as a result of the alleged FMLA interference.[74] Thus, defendants' motion for summary judgment is denied with respect to plaintiff's FMLA interference claim.

### D.      Integrated Enterprise

Genon Energy was the parent company of Genon Services at times relevant to this dispute, and it moves for summary judgment, arguing that it was not plaintiff's employer, and therefore, cannot be liable for any ADA or FMLA violations of Genon Services. Dkt. 19. Plaintiff counters that Genon Energy and Genon Services operated as an integrated business enterprise and employees of both companies took discriminatory and retaliatory action. Because the only remaining claim following the analysis of Genon Services's motion for summary judgment is plaintiff's FMLA interference claim, the court will only evaluate Genon Energy's employment status as it relates to

---

[74] Dkt. 17, App'x 2, p. 21; *id.*, App'x 3, p. 42.

plaintiff's claim of FMLA interference, specifically Champion requiring plaintiff to do work while on FMLA leave.

The FMLA defines the term "employer" to include "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). The Fifth Circuit considers Fair Labor Standard Act jurisprudence when interpreting the boundaries of the term "employer" under the FMLA. *Modica v. Taylor*, 465 F.3d 174, 186 (5th Cir. 2006) (noting the similarity of the definitions of "employer" under the FMLA and the FLSA).

To determine whether a parent corporation and its subsidiary may be regarded as a "single employer," the court should consider (1) interrelation of operations, (2) centralized control of labor or employment decisions, (3) common management, and (4) common ownership or financial control. *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983). The Fifth Circuit has instructed, however, that the analysis should "ultimately focus on the question whether the parent corporation was a final decision-maker in connection with the employment matters underlying the litigation, . . . and all four factors are examined only as they bear on this precise issue." *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir. 1997) (citations omitted). In other words, the court must determine "whether the parent corporation was so involved in the daily employment decisions of the subsidiary as to justify treating the two corporations as a single employer." *Id.* at n.3 (citations omitted). "Suitable evidence of centralized labor and employment decisions includes parental control of hiring, firing, promoting, paying, transferring, or supervising employees of the subsidiary." *Id.* at 780 n.8 (citing *Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 982 (4th Cir. 1987)). There is a strong presumption that a parent corporation is not the employer of its subsidiary's employees. *Id.* at 778. Plaintiff bears the burden of proving that Genon Energy was her employer. *Coleman v. FFE*

24

*Transp. Services, Inc.*, 2013 WL 1914932, at *5 (N.D. Tex. May 9, 2013); *Artis v. Asberry*, 2012 WL 5031196, at *3 (S.D. Tex. Oct. 16, 2012).

In this case, plaintiff has not offered sufficient evidence to create a genuine issue of material fact overcoming the strong presumption that a parent company will not be held responsible for the acts of its subsidiary's employees.  The evidence shows that Genon Services hired plaintiff, managed her payroll and tax records, employed all the employees implicated in plaintiff's allegations, and was referenced as plaintiff's employer in her performance reviews.[75]  While the nature of Genon Services's operations are not clear, it is clear based on the current record that Genon Energy was the parent company to 89 subsidiaries and Genon Services managed several employees (including those involved in Human Resources and the E&C Department).[76]  Ultimately, though, plaintiff has not demonstrated how Genon Energy was involved in the relevant employment decisions at issue in this case.  Therefore, the court finds that Genon Energy was not plaintiff's employer and grants its motion for summary judgment.

---

[75]  Dkt. 19, App'x A.

[76]  Dkt. 19, App'x A, Declaration of Karen Morrison, ¶¶2-3

## IV. CONCLUSION

For these reasons, the court finds that plaintiff has failed to demonstrate a genuine issue of material fact exists with respect to her ADA and FMLA retaliation, hostile work environment, and discrimination claims. However, plaintiff has shown a genuine factual dispute regarding whether she was required to work while on full-time FMLA leave, resulting in interference with her FMLA rights. The court further finds that the evidence does not support plaintiff's position that Genon Energy was her employer for purposes of the FMLA. Therefore, Genon Services's motion for summary judgment (Dkt. 17) is GRANTED in part and DENIED in part and Genon Energy's motion for summary judgment (Dkt. 19) should be GRANTED.

It is so ORDERED.

Signed at Houston, Texas on January 12, 2015.

_____
Gray H. Miller
United States District Judge